UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
VICTOR AHAIWE,                          :      24cv5550 (DLC)
                                        :
                    Petitioner,         :      20cr179-11 (DLC)
                                        :
          -v-                           :      OPINION AND
                                        :      ORDER
UNITED STATES OF AMERICA,               :
                                        :
                    Defendant.          :
                                        :
--------------------------------------- X

DENISE COTE, District Judge:

     On July 19, 2024, Victor Ahaiwe filed a petition for a writ
of habeas corpus.  For the following reasons, the petition is
denied.


## Background

     On March 4, 2020, Ahaiwe was charged along with ten
co-conspirators in a five-count indictment.  Ahaiwe was charged
in three counts with participating in a conspiracy to commit
bank fraud, participating in a conspiracy to commit money
laundering, and the commission of aggravated identify theft, in
violation of 18 U.S.C. §§ 1349, 1956(h), and 1028A(a)(1).
Ahaiwe was arrested in California on March 8 and released on
bail.  On August 13, three additional defendants were charged in
a superseding indictment.

Ahaiwe proceeded to trial.  On June 10, 2021, a jury returned a verdict of guilty on each of the three counts for which he had been indicted.

As shown at trial, Ahaiwe participated in a far-flung international money laundering scheme to conceal and distribute money obtained by fraud.  The evidence at trial included the movement to the United States of money fraudulently obtained from SZV, a public organization in the island nation of St. Martin that provides health insurance and pension services to the country's residents.  Ahaiwe received $100,000 of the fraud's proceeds from co-conspirator Herman Bass and laundered that money through six different bank accounts.  Five of the accounts were opened in the name of Fatah Paramole, a friend of Ahaiwe who had recently died and whose identify Ahaiwe had assumed.  Ahaiwe also stole over $38,000 from Paramole's estate.

The evidence at trial included testimony from an FBI agent who had interviewed Ahaiwe in December 2018.  The agent spoke to Ahaiwe about a series of international wire transactions that appeared to be fraudulent.  At the meeting, Ahaiwe signed a money mule letter in which he acknowledged being advised that he may be engaging in money laundering.  Only months thereafter, Ahaiwe began opening bank accounts through which he laundered the fraudulently obtained St. Martin funds.

2

The evidence at trial also showed that Ahaiwe had stolen the identities of others.  He had possession of a number of fake identification cards, a bank and credit card embossing machine, and a foil stamping machine.

On February 11, 2022, Ahaiwe was sentenced principally to a term of 84 months' imprisonment.  Ahaiwe appealed his conviction, which was affirmed on June 27, 2023.  On appeal, Ahaiwe argued that there was insufficient evidence as to venue in the Southern District of New York and that certain evidence regarding identity theft and money laundering was admitted in error at trial.  United States v. Ahaiwe, No. 21-2491, 2023 WL 4196954 (2d Cir. June 27, 2023).  Ahaiwe did not petition for a writ of certiorari.  Therefore, his deadline to file a habeas petition was September 25, 2024.

On February 23, 2024, Ahaiwe moved for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and for compassionate release.  Those motions were denied on July 15.  On April 30 and June 13, Ahaiwe requested copies of documents to assist in the filing of a habeas petition.  Ahaiwe's prior counsel responded to those requests.

Ahaiwe filed a timely habeas petition.  The petition bears the date June 11, 2024 and was received on July 19.  It includes a twenty-four page attachment as well as exhibits.  The

Government responded on August 12.  The petition was fully submitted on October 4 when the defendant's September 24 reply was docketed.

## Discussion

Under 28 U.S.C. § 2255, a movant may petition a court to "vacate, set aside or correct" a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States" or is "otherwise subject to collateral attack." Stone v. United States, 37 F.4th 825, 828 (2d Cir. 2022) (citing 28 U.S.C. § 2255). Pro se litigants are "entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted). Nevertheless, a pro se habeas petitioner must prove the unconstitutionality of his conviction under § 2255 by a preponderance of the evidence. See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

A procedural default rule prevents claims that could have been brought on direct appeal from being raised on a motion under § 2255 absent a demonstration of either (1) cause and actual prejudice or (2) actual innocence. Gupta v. United States, 913 F.3d 81, 84 (2d Cir. 2019). To demonstrate cause, a defendant must show "some objective factor external to the

defense, such that the claim was so novel that its legal basis was not reasonably available to counsel." Id. (citation omitted). To make a showing of actual innocence, the defendant must prove his "factual innocence, not mere legal insufficiency" by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. at 85 (citation omitted). The procedural default rule does not, however, apply to claims of ineffective assistance of counsel. Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010).

In support of his petition, Ahaiwe makes various arguments related to his trial, the Government's actions, his sentencing, and his right to proceed pro se. None of them succeeds in showing that his conviction should be vacated. The majority of Ahaiwe's claims are barred by the procedural default rule because they were not raised on direct appeal, and Ahaiwe has not shown cause and prejudice or actual innocence. Nonetheless, the discussion that follows addresses the substance of each of Ahaiwe's claims.

I.  Jury Selection

Ahaiwe contends that the jury selection process was flawed because the jury was told that he is from Nigeria. He contends that this information biased the jury against him because

Nigerians are well known to engage in wire fraud and money laundering.

In their voir dire requests, defense counsel asked that the voir dire include the following inquiries:  "Mr. Ahaiwe is Nigerian.  Do you have any assumptions, opinions, or feelings about Mr. Ahaiwe based on his race or nationality?  Does Mr. Ahaiwe's race/nationality affect your ability to be fair or impartial to him in any way?"  At the final pretrial conference, the Court reviewed the proposed voir dire questions with counsel and inquired whether Ahaiwe was a Nigerian or U.S. citizen. Defense counsel stated that he was a naturalized U.S. citizen. The Court explained that, since Mr. Ahaiwe is American, the jury should be informed that he was born in Nigeria.  Defense counsel agreed and explained that they wanted to elicit if there is "any bias" towards the defendant based on his ethnicity.

Based on defense counsel's requests and the discussion at the final pretrial conference, the written voir dire form given to each member of the venire included the following questions: "Do you believe that it would be difficult for you to be a fair and impartial juror because the defendant was born in Nigeria? Because the defendant is an immigrant?"

There is no basis to find that the voir dire process violated the defendant's rights.  To the contrary, to reduce the

6

likelihood of bias against the defendant because of his country
of origin, defense counsel properly asked that the issue be
addressed in the voir dire and it was.  See United States v.
Nieves, 58 F.4th 623, 631-33 (2d Cir. 2023) (duty of courts to
screen for bias in voir dire).

II. Sufficiency of Trial Evidence

Ahaiwe makes several arguments about the evidence at trial.
First, he contends that there was insufficient evidence to
support his conviction.  In particular, he asserts that there
was insufficient evidence that he conspired with Mr. Bass, that
he acted without fraudulent intent or knowledge when he
negotiated Mr. Bass's check, and that he was in fact Mr. Bass's
victim.

Ahaiwe already challenged the sufficiency of the trial
evidence on appeal, and that argument was rejected by the Second
Circuit.  Ahaiwe is barred from relitigating that issue in a
habeas proceeding.  See Yick Man Mui, 614 F.3d at 53-54.
Regardless, this argument has no merit.  As the Court commented
at the conclusion of trial, the evidence against Ahaiwe was
"overwhelming."  It showed that Ahaiwe took part in the
conspiracy and amply supported the jury's decision to convict.
The Second Circuit likewise concluded that, based on the record
before it, "the jury could find Ahaiwe's membership in the

7

larger conspiracy." Ahaiwe, 2023 WL 4196954, at *2. Ahaiwe has not offered any reason to believe the evidence against him was insufficient.

Next, Ahaiwe challenges the admission of evidence seized in a search of his office on the ground that the items were not properly authenticated. He argues that the Government should have been required to call to the witness stand each of the law enforcement officers involved in the search. He argues that he was prejudiced by the admission of this evidence since he shared the office with others. He contends as well that the Government had a duty to inform the jury that he was not in the country at the time the documents were seized.

At trial, the Government relied on the testimony of a Special Agent with the U.S. Secret Service who was present at the search of his office to identify each of the items seized during the search. The agent testified that the office was a small, locked suite and that he along with three other agents participated in the search. Because of the small size of the office, the agents conducted the search as a group, showing each other every item they found and watching as it was placed aside and ultimately packed in cardboard boxes. The agent testified that he was present for the entire duration of the search and "saw every piece of evidence that was collected during that

search."  This testimony was sufficient to support admission of the seized items.  See United States v. Al-Moayad, 545 F.3d 139, 172-73 (2d Cir. 2008).[1]

To the extent Ahaiwe makes similar arguments about the items seized from his home, those arguments also fail.  The items seized from his home were also properly authenticated by an agent who participated in the search and was responsible for tagging every item found.

Finally, Ahaiwe contends that his conviction for aggravated identity theft pursuant to 18 U.S.C. § 1028A(a)(1) must be vacated since it related to his use of the identity of a deceased person.  Ahaiwe argues that the crime of identity theft only applies to the theft of the identity of a living person. The statute, however, requires proof of wrongful use of the identify "of another person."  Id.  The statute does not require proof that the person be alive at the time of wrongful use. United States v. Gagarin, 950 F.3d 596, 605 n.2 (9th Cir. 2020); United States v. Zuniga-Arteaga, 681 F.3d 1220, 1224 (11th Cir. 2012).  While Ahaiwe relies on United States v. Gomez-Castro,

---

[1] In his reply, Ahaiwe appears to argue that local California authorities had given him permission to store Paramole's possessions in his office.  At trial, the Government showed that Ahaiwe had wrongfully used Paramole's identity to commit fraud. Ahaiwe's access to Paramole's possessions, even if legitimate, supports and does not undercut the Government's case at trial and the defendant's conviction.

605 F.3d 1245 (11th Cir. 2010), that case only requires the
Government to establish that the defendant knew that the
identity at issue "belonged to a real person."  Id. at 1248.

III. Jury Charge

Ahaiwe argues that the charge regarding circumstantial
evidence permitted the jury to engage in speculation to convict
him.  The charge at issue instructed the jury that they may
consider circumstantial evidence but, in order to convict, they
must be satisfied of the defendant's guilt beyond a reasonable
doubt based on all the evidence in the case.  This charge was
consistent with the established law in this Circuit and Ahaiwe
has not explained how it failed to comply with those principles.
See, e.g., United States v. Glenn, 312 F.3d 58, 64 (2d Cir.
2002).

IV.  Government Misconduct

Ahaiwe argues that the Government committed a Brady
violation when it withheld a surveillance video showing that
someone other than him had access to the office from which
seized materials were taken.  The Government denies that it ever
had possession of such a video or that it failed to provide any
Brady material to Ahaiwe.  The Government also states that,
before trial, it produced to the defense notes of an interview
with an employee of the building's landlord.  In those notes the

employee is reported to have told the Government that she had
seen a few people other than the defendant come in and out of
the defendant's office, but that she did not know them.  The
Government also states that the notes included the employee's
telephone number.  Ahaiwe and his counsel had the ability to
contact his landlord and inquire regarding any video that may
exist.  He has not shown either that such a video existed or
that the Government failed to produce Brady material.[2]

In his reply, Ahaiwe also argues that the Government
violated its Brady obligations by failing to disclose purported
criminal history of two of its witnesses, Yingyan Sun and Kevin
Ma.  Ms. Sun and Mr. Ma resided at the 9446 Sunglow Court
address where Ahaiwe later resided.  Evidence at trial,
including testimony from Ms. Sun, showed that Ahaiwe stole Ms.
Sun's identity and operated bank accounts in her name.  Mr. Ma
provided testimony corroborating that Ahaiwe had stolen the
identity of his mother, Man Ling.

This testimony was admitted pursuant to an Opinion of May
26, 2021 that resolved the parties' pretrial motions in limine.

---

[2] In his reply, Ahaiwe appears to argue that the surveillance
video would also have shown that the Government "broke into" the
office.  But the Government's search was pursuant to a search
warrant.  Its means of entry into the location it was authorized
to search is immaterial to the admission of the seized evidence
at trial.

United States v. Ahaiwe, No. 20cr179, 2021 WL 2134922, at *3
(S.D.N.Y. May 26, 2021).  Ahaiwe's theft of Ms. Sun's identity
was admitted as direct evidence of the charged crimes and
Ahaiwe's theft of Ms. Ling's identity was admitted as similar
act evidence pursuant to Rule 404(b), Fed. R. Evid.  Ahaiwe
unsuccessfully challenged the admissibility of this identity
theft evidence in his direct appeal from his conviction.
Ahaiwe, 2023 WL 4196954, at *2-3.

Ahaiwe has not provided any basis to find that the
Government committed a Brady violation related to Ms. Sun and
Mr. Ma.  He has not shown that they had a criminal history, much
less one that could have been used to successfully impeach their
testimony, which was largely offered to explain documents that
were received into evidence.  Notably, Ahaiwe did not mention
this purported Brady violation in his habeas petition; he only
raised it in his reply brief.  See Tardif v. City of New York,
991 F.3d 394, 404 n.7 (2d Cir. 2021) (arguments first raised in
a reply brief are generally deemed waived).

V.   Ineffective Assistance

Ahaiwe makes two principal arguments regarding his legal
representation before and at his trial.  One of these arguments
is that his communications with his attorney were hampered
because of COVID-19 lockdowns at the BOP facility in which he

was held during his trial.  This issue can be swiftly addressed.
Ahaiwe was not remanded until the jury returned its verdict.  As
a result, the BOP could not have interfered with Ahaiwe's
defense at trial.

Ahaiwe also complains that his right to a speedy trial was
violated because his attorney took over a year to investigate
the charges against him and prepare his defense.  The chronology
that pertains to this speedy trial claim is as follows.

Ahaiwe was indicted on March 4, 2020, on the eve of the
COVID-19 pandemic.  He was arrested in California and released
on bail.  Shortly thereafter, Esere Onaodowan was appointed to
represent him in this district.

Ms. Onaodowan's representation of Ahaiwe was diligent.  She
reviewed and synthesized large amounts of discovery materials
provided by the Government, including complex financial
documents and forensic data.  Because Ahaiwe resided in
California, she reviewed discovery materials with him by video
conference.  Ms. Onaodowan traveled to California twice during
the pandemic to meet with Ahaiwe in person, in October 2020 and
April 2021.  She also interviewed potential witnesses during her
travels to California.  In addition, Ms. Onaodowan hired an
investigator in California to assist her in preparing the

13

defense and arranged for a forensic psychiatric evaluation of Ahaiwe.

The Southern District of New York had suspended jury trials shortly after the commencement of the pandemic, but resumed jury trials in September 2020. Jury trials were held in six courtrooms that had been reconfigured during the summer of 2020 to permit social distancing. The judges of the Court adopted a protocol of assigning cases to be tried in those six courtrooms and Ahaiwe's trial was scheduled pursuant to that protocol.

On March 2, 2021, Ahaiwe's trial was set for June 7. On April 2, Ahaiwe rejected the Government's plea offer. On April 12, Ms. Onaodowan sought to be relieved as counsel, citing Ahaiwe's verbal abuse. At a conference on April 16, the Court denied the request but suggested that Ms. Onaodowan apply for co-counsel to assist her. The Court also admonished Ahaiwe regarding his treatment of his attorney.

On April 23, Karloff Commissiong was appointed to join Ms. Onaodowan in representing Ahaiwe. Together they vigorously represented Ahaiwe at trial. At the conclusion of the trial, the Court noted on the record its appreciation for "how committed and devoted defense counsel was to the preparation of this case and the representation of their client given the difficulties, the uphill battle that had to be climbed to defend

14

this case, given the nature of the evidence and its strength." The Court described defense counsel's opening as "strong" and its summation as "fabulous." It also stated that it was impressed with Ms. Onaodowan's overall conduct of the defense, and in particular her choice to add to the defense team Mr. Commissiong, who the Court described as "very experienced" and "well-regarded." As noted above, the defendant was not remanded until the jury returned its verdict.

Ahaiwe's right to a speedy trial was not violated. In fact, no court in the nation succeeded as well as the Southern District of New York in preserving the right to trial by jury during the pandemic. Although the Speedy Trial Act requires that a criminal defendant's trial commence within 70 days of his indictment or first appearance (whichever is later), some periods of time are excluded from being counted, either automatically or by determination of a district court. United States v. Hoskins, 44 F.4th 140, 152 (2d Cir. 2022) (citing 18 U.S.C. §§ 3161, 3162). Here, the time period from Ahaiwe's arrest through Ahaiwe's trial was properly excluded in the interest of justice, as set forth in Orders of March 5, 2020, March 16, 2020, May 8, 2020, and October 1, 2020.[3]

---

[3] In his reply, Ahaiwe also appears to argue that the Speedy Trial Act required his trial to begin within 30 days of his

Nor was there any violation of Ahaiwe's Sixth Amendment right to a speedy trial. The Speedy Trial Act, which was not violated here, is generally "more stringent" than the Sixth Amendment right to a speedy trial. Betterman v. Montana, 578 U.S. 437, 445 (2016). Moreover, all the relevant factors indicate that there was no violation under the Sixth Amendment: there was no excessive delay, the delay was justified, Ahaiwe did not assert that his right to a speedy trial was being violated, and he has not identified any prejudice to his defense. See Hoskins, 44 F.4th at 153. Indeed, Ahaiwe's appointed counsel went to extraordinary lengths during a pandemic to investigate any potential defense and to meet with the defendant in person in California.

VI. Sentencing

Ahaiwe makes several arguments regarding his sentencing. None of these arguments has merit. To place these arguments in context, however, it is helpful to describe some of the principal events that followed the verdict. Many of these events were described during the sentencing proceeding on February 10, 2022.

---

arrest. He questions as well whether time was properly excluded pursuant to the Act. These claims are without merit.

16

As explained above, Ahaiwe was represented at trial by Ms. Onaodowan and Mr. Commissiong, who were both appointed from the CJA panel. Ahaiwe was convicted on all counts on June 10, 2021 and remanded after the verdict.

In August and September of 2021, the Court received letters that Ahaiwe had fabricated, which purported to be from third parties. The letters alleged that Ahaiwe was innocent and had been framed by the Government. The letters also accused defense counsel of being ineffective. Ms. Onaodowan and Mr. Commissiong thereafter asked to be relieved, raising concerns that the accusations of ineffectiveness against them created conflicts of interest.

On September 15, CJA counsel Leonardo Aldridge was appointed to represent Ahaiwe, and Ms. Onaodowan and Mr. Commissiong were relieved. Anticipating that the defendant may seek a new trial or wish to complain about the performance of his trial counsel, Mr. Aldridge was given until October 22 to file such a motion. After he reviewed the trial transcript and consulted with Ahaiwe's trial counsel, Mr. Aldridge decided not to file such a motion.

Meanwhile, on October 1, Ahaiwe requested that yet another attorney be appointed to represent him. On October 4, the Court denied that request, but advised Ahaiwe that he could retain

17

counsel or, if permitted by the Court, proceed pro se.  At an
October 7 conference, Ahaiwe claimed that he had retained Emeka
Nnaji to represent him.  There does not appear to be an attorney
of that name admitted to practice law in New York, nor was any
notice of appearance ever filed by an attorney of that name.  At
a November 18 conference, Ahaiwe's request to proceed pro se was
denied after he refused to cooperate in the Faretta allocution.[4]
See United States v. Garrett, 42 F.4th 114, 118-19 (2d Cir.
2022).  Soon thereafter, Ahaiwe retained Jonathan Rosenberg to
represent him.  Mr. Rosenberg filed a notice of appearance on
December 23 and filed a motion for a new trial on January 5,
2022.  While Mr. Aldridge continued to represent Ahaiwe, Mr.
Rosenberg also attended the sentence and was heard regarding his
motion.

    Sentencing was initially scheduled for January 14, 2022,
but was rescheduled twice because the defendant was in
quarantine, first to January 28 and then to February 10.  The
parties filed multiple submissions in advance of the February
10, 2022 sentence.  They included the defendant's pro se

_____

[4] Although Ahaiwe complained during the conference that he was
unable to communicate from the MDC with the outside world, and
therefore unable to retain counsel, MDC telephone records that
the Government submitted on December 3 showed his frequent use
of the telephone to call Nigeria and California, among other
locations.

submission of December 3 entitled "Presentencing Report Controverted Disputes," a December 19 submission from Mr. Aldridge, a new trial motion filed by Mr. Rosenberg on January 5, and a Government submission of January 6. The Court also considered at sentence an August 25 submission with attachments from the defendant's wife and an "Allocution" from the defendant dated February 2.[5]

Ahaiwe first complains that the Government contributed to the Presentence Report ("PSR"), which was finalized on September 1, 2021. Ahaiwe is correct that the Government contributed to the PSR, in particular to the description of the offense. In the section entitled "The Offense Conduct," the PSR explains at more than one point that its description of that conduct is "According to the Government." Ahaiwe has failed to show that there was any violation of his due process rights in connection with that practice. He and his attorney were given an opportunity to object to any portion of the PSR that they believed was incorrect. Among other things, the defendant filed the December 3 and February 2 documents to present his views.

---

[5] In his reply, Ahaiwe appears to argue that the Court did not review his pro se submissions before sentencing. The Court read all of them, and listed those pertaining to Ahaiwe's sentence at the sentencing proceeding on February 10, 2022.

Ahaiwe next complains that the Probation Department did not interview him. But, as the PSR indicates, the Probation Department did interview him by telephone, with defense counsel, on July 6, 2021. Even though the interview was not completed "due to timing issues with MDC," it appears to have been fulsome.[6] The PSR contains a significant amount of personal information that the defendant provided to the probation officer during the interview, and the only portion of the interview that appears to have been incomplete was a discussion of Ahaiwe's employment before 2003. The PSR also indicates that defense counsel advised the Probation Department that the defendant would submit a written statement regarding the offense for inclusion in the PSR, but that such a statement had not been received by the Probation Department as of the time the PSR was finalized.

Ahaiwe makes several objections to the Sentencing Guidelines calculation. He argues that there was impermissible double counting and improper grouping in connection with the determination of his Sentencing Guidelines range. He also contends that the loss amount was incorrectly calculated, an argument that was made by counsel at sentencing and rejected by

---

[6] A second call did not occur despite "multiple attempts" due to "scheduling issues" with the facility.

the Court.  Ahaiwe has failed to identify any error in the Sentencing Guidelines calculation.

Ahaiwe also argues that his sentence was too severe.  He argues that the offense level substantially overstated the seriousness of the offense and that the Court did not consider the COVID-19 pandemic in imposing sentence.  The Court calculated the defendant's Sentencing Guidelines range as 102 to 121 months' imprisonment, which included a two-year consecutive mandatory sentence due to the conviction on Count Three. Despite finding that Ahaiwe was a serial fraudster who presented a risk of recidivism, the Court imposed a sentence of 84 months, composed of 60 months on Counts One and Two, to be served concurrently, and to be followed by a sentence of 24 months on Count Three.  The Court observed that it imposed a sentence that varied from the Guidelines in consideration of the § 3553(a) factors, including the need to avoid unwarranted sentencing disparity.  Ahaiwe has not shown that there was an error in his sentencing that requires his conviction to be vacated.

Finally, Ahaiwe asserts that he should have been given more time to file a motion arguing that Mr. Aldridge was ineffective and complains that it was a violation of his right to counsel to have both Mr. Aldridge and his retained counsel participate in his sentencing proceeding.  Ahaiwe has not shown either that Mr.

Aldridge was ineffective or that he should have been relieved.
Despite the difficult circumstances, Mr. Aldridge represented
Ahaiwe diligently.  Moreover, any change of counsel would have
entailed a substantial additional delay in the sentencing
proceeding, which had already been delayed for many months.
Accordingly, the Court allowed Ahaiwe's newly retained counsel
to be heard on those issues he was prepared to address, and
Ahaiwe's appointed counsel continued to represent him at the
sentence.

More generally, although Ahaiwe has made a series of
arguments about his sentencing proceeding, including accusations
of ineffectiveness against multiple attorneys who have
represented him, there is no reason to believe that there was
any error in the proceedings or that Ahaiwe's attorneys failed
in their duty to represent him.  Ahaiwe has not shown that his
conviction should be vacated because he was denied effective
representation in connection with his sentencing proceeding.

VII. Right to Proceed Pro Se

Ahaiwe complains that he was denied his right to represent
himself at trial.  But he did not advise the Court at any point
before or during the trial that he desired to proceed pro se.
His petition does not identify a date on which he purportedly
made such an application or give any other indication of when he

invoked that right.  In fact, Ahaiwe first requested to represent himself after trial, and that request was promptly addressed at the November 18, 2021 conference.  Accordingly, this claim fails as well.

### Conclusion

The defendant's July 19, 2024 petition for a writ of habeas corpus is denied.  The defendant having not made a substantial showing of a denial of a federal right, a certificate of appealability shall not be granted.  Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).

Dated:    New York, New York
          January 23, 2025

                                        _____
                                            DENISE COTE
                                   United States District Judge

23